Arthur L. CLARK

v.

Dwayne NICKESON, Warden, Hartford
Correctional Center.

Civ. No. 14160.

United States District Court,
D. Connecticut.

Jan. 7, 1971.

**416**

Paul R. Rice, Manchester, Conn., for plaintiff.

John D. LaBelle, State's Atty., Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

The petitioner is charged by the State of Connecticut with possession and sale of narcotic drugs, to wit: heroin and marihuana. He is currently in custody in Norwich State Hospital, a mental institution, awaiting trial on these charges and is before this court on a petition for habeas corpus pursuant to 28 U.S.C. § 2254.[1]

The basis for Clark's petition is that he has been denied his rights under the eighth and fourteenth amendments to the federal Constitution in that his present bail of $10,000 is unreasonable and excessive. Since he cannot meet this bond requirement he claims that he

is being unconstitutionally restrained of his liberty. Clark prays that this court order that bail be set at a reasonable amount of $1,000 or that he be discharged from custody.

The $10,000 bond was originally set by the Connecticut Superior Court Judge who issued the bench warrant against petitioner. Clark's motion for reduction of the bond alleged in specific terms the substantive facts upon which conditions of release are ordinarily based. On November 6, 1970, Clark's motion was denied following a hearing in open court. A petition for review of that order was taken to the Connecticut Supreme Court in the form of a petition for an expedited and preferential bail review, pursuant to Conn.Gen.Stats. § 54–63g,[2] on November 9, 1970. On December 1, 1970, the Supreme Court dismissed the petition on the ground that a decision on the merits was impossible due to the inadequacy of the record presented. State v. Clark, 274 A.2d 451.

Petitioner thus claims that he has exhausted his state remedies and that his petition for habeas corpus should now be considered by this court.

### I.

*Waiver*

The respondent contends that this petition should be dismissed because the petitioner has deliberately by-passed his opportunity to present factual evidence or affidavits to the Superior Court. In so doing, respondent argues,

1. Section 2254 provides:
"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the

meaning of this section, if he has the right under the law of the State to raise, by any avialable procedure, the question presented."

2. The relevant portion of § 54–63g reads as follows:
"Any accused person * * * aggrieved by an order of * * * the superior court concerning release, may petition the supreme court for review of such order. Any such petition shall have precedence over any other matter before said * * * supreme court and the hearing shall be held on one-day notice to the parties concerned."

the petitioner prevented reasoned consideration of the merits of his claim by that court; foreclosed the state from rebutting factual evidence; and rendered impossible any review of the ruling by the Supreme Court. Having deliberately waived state court remedies, the argument continues, he should not be allowed to pursue this petition in a federal court. *See* Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963).[3]

In response to this contention, the petitioner argues that he fully complied with the prevailing Connecticut practice in his presentation of his motion for reduction of bond. At the hearing before this court on December 7, 1970, the petitioner presented evidence that the bail hearings are informal procedures in which sworn testimony or affidavits are rarely offered and decisions are made largely on the basis of oral or written representations about the reliability of the accused as a bail risk by his counsel and by the prosecuting attorney. Petitioner relied on long-standing custom and presented such written representations about his ties to the community and other factors pertinent to his bail risk. It was not disputed that this is the customary procedure.[4] Indeed, as the Supreme Court of Connecticut has itself recently stressed, State v. Menillo, 159 Conn. 264, 282, 268 A.2d 667, 675–676 (1970):

"It perhaps should be pointed out that the bail hearing is not a determination of guilt or innocence but rather a determination of the preliminary issue of the right to reasonable bail. *Unless the accused insists otherwise*, it may well be conducted somewhat informally, as upon affidavits. If this cannot be agreed upon, then the accused has the right of cross-examination of the state's witnesses at the bail hearing as well as the right to introduce evidence in his favor." (Emphasis added).

3. The Supreme Court held in Fay v. Noia that pursuant to 28 U.S.C. § 2254 "the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies."

4. The federal Bail Reform Act specifically provides under 18 U.S.C. § 3146(f) that:
   "(f) Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law."
   With regard to the sentencing of a prisoner where matters bearing on his "life and characteristics" of the same nature as those which bear upon bail risk are considered and relied upon, an informal and discretionary procedure similar to that usually employed in fixing bail has been upheld. The Supreme Court has stated that holding a formal adversary hearing for the purpose of adjudicating facts would be contrary to the interests of justice. In Williams v. New York, 337 U.S. 241, 249–250, 69 S.Ct. 1079, 1085–1086, 93 L.Ed. 1337 (1949), the Court stated:
   "Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders. Their reports have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork and inadequate information. To deprive sentencing judges of this kind of information would undermine modern penological procedural policies that have been cautiously adopted throughout the nation after careful consideration and experimentation. We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination. And the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues." (Footnotes omitted).
   *Cf.* United States v. Doyle, 348 F.2d 715, 721 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965).

Without adverting to State v. Menillo, *supra*, the Connecticut Supreme Court, in dismissing Clark's petition for review stated:

> "[T]here is no record before us from which we can review the alleged action and ruling of the court below and there is no finding of facts or conclusions of law by which the exercise of discretion by the court below can be tested. See Practice Book § 609; State v. Hudson, 154 Conn. 631, 638, 228 A.2d 132. Consequently, a decision on the merits is impossible." 274 A.2d 451 (1970).

By its use of the signal "See" before "Practice Book § 609," the Supreme Court has now indicated that it considers a detailed finding of facts and conclusions of law from the Superior Court to be necessary.[5] But until this analogue to Practice Book § 609 and the rules for appeals from final judgments was enunciated in this case, the Supreme Court of Connecticut in considering an application for review of bail orders had referred to a less substantial procedure in State v. Carter, 159 Conn. 285, 288, 268 A.2d 677, 679 (1970): "Counsel for the defendants, and the state's attorney, in each case have summarized their claims as to the evidence at the bail hearing. We approve this procedure * * *." Practice Book § 694 provides, without more, that upon written motion for review stating the grounds for the relief sought, the Supreme Court "may modify or vacate any order denying or fixing the amount of bail."

Compliance with Practice Book § 609 and its corollary rules governing appellate procedure in appeals from final judgments is obviously at odds with § 54–63g's statutory provision for expedited consideration of bail questions and with the federal Supreme Court's view in Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951), that "[r]elief in this type of case must be speedy if it is to be effective." *Cf.* Winnick v. Reilly, 100 Conn. 291, 300–301, 123 A. 440 (1924). Without the benefit of any earlier specific instruction that Practice Book § 609 controlled motions for review of bail orders,[6] whatever mistake there may have been in the state court is not a sufficient basis for a conclusion that the petitioner deliberately "by-passed" state procedural requirements.[7] He did try, pursuant to statutory authority, to have the order reviewed.

In view of what was known about earlier practice, any mistake in the proceed-

---

5. A Uniform System of Citation, 87, 11th ed., Col.L.Rev.; Harv.L.Rev.; Univ. of Pa.L.Rev., and Yale L.J. interprets "See" to indicate "that the asserted opinion or conclusion will be suggested by an examination of the cited authority * * *." Section 609 provides as follows:

    "If error appears on the face of the record no finding is necessary.

    "If the error claimed is in rulings upon the admission or rejection of evidence or other rulings in the course of the trial, in the charge to the jury or in conclusions of law or fact that do not appear upon the face of the record, a finding by the trial court is necessary.

    "If on an appeal from the granting of a motion to set the verdict aside the appellant desires to present such rulings, or if the decision upon the motion is based on such rulings, a finding is necessary, and should be in the form for findings in cases tried to the jury."

The procedure for obtaining a finding from the trial court is set out in §§ 613–628 of the Connecticut Practice Book. Such procedure entails a minimum of twenty-four days, a time period almost never realized in actual practice.

6. Although the same procedure was enforced in State v. Hudson, 154 Conn. 631, 228 A.2d 132 (1967), and followed in State v. Reddick, 139 Conn. 398, 400, 94 A.2d 613 (1953), both cases involved defendants convicted and sentenced who sought waiver of fees to appeal.

7. In Fay v. Noia, *supra*, 372 U.S. at 433, 83 S.Ct. at 846, the Supreme Court indicated that a "deliberate by-pass" entails not merely a conscious choice, but one improperly motivated, such as by a desire "to subvert or evade the orderly adjudication * * * in the state courts." In Townsend v. Sain, 372 U.S. 293, 322, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), "deliberate by-pass" was interpreted to be one of "inexcusable default."

ings cannot be regarded as ineffectiveness of counsel or as a refusal for tactical reasons to create a more adequate record.

## II.
### Exhaustion of Remedies

■ The respondent also contends that the petitioner has failed to exhaust his state remedies because the Connecticut Supreme Court never reached the merits of his claim but dismissed his petition on the ground of his procedural default. The failure to obtain a remedy which may have been available does not preclude a finding of exhaustion unless as noted above the failure was a "deliberate by-pass" of state remedies. At the same time, even though there has not been a waiver of an available remedy, an aborted attempt to employ a state remedy may not put it out of reach.[8] The question, therefore, remains whether, because the Connecticut Supreme Court refused to pass on the merits of petitioner's claims, there currently are available and adequate remedies in the state courts. If so, Clark's petition is premature in this court. See Fay v. Noia, supra, 372 U.S. at 435, 83 S.Ct. at 847.[9]

■■ The command in 28 U.S.C. § 2254 that a petitioner in state custody must exhaust his state remedies before applying to a federal district court for habeas corpus is not a jurisdictional requirement, but a principle of comity. Cf. Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950);

Wainwright v. Simpson, 360 F.2d 307 (5th Cir. 1966). "The rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power.'" Fay v. Noia, supra, 372 U.S. at 420, 83 S.Ct. at 839 (citations omitted). In other words, the principle underlying the exhaustion requirement is that if the doors of the state and federal courts are both open, a state prisoner ought to try the state door first.

■ Where remedies afforded by state appellate procedure have not been exhausted, a federal petition for habeas corpus should be denied without prejudice. Ex parte Davis, 318 U.S. 412, 63 S.Ct. 679, 87 L.Ed. 868 (1943); United States ex rel. Kalan v. Martin, 205 F.2d 514 (2d Cir. 1953).

> "[W]here the federal habeas court is unable to determine unequivocally that an issue has been considered and ruled upon by the state courts, comity requires us to 'put the fact finding and law finding responsibility squarely on the * * * [state courts] where, initially at least, it belongs.' Spencer v. Wainwright, 403 F.2d 778 (5th Cir. 1968)." Williams v. Wainwright, 410 F.2d 144, 145 (5th Cir. 1969), cert. denied, 398 U.S. 943, 90 S.Ct. 1846, 26 L.Ed.2d 281 (1970).

It has further been held that where all the facts necessary for a reasoned consideration of a petitioner's .claim have not been presented to the state court of last resort, a federal court should dismiss a habeas corpus petition without

8. It is a principle of federal appellate review that the United States Supreme Court "will decline to review state court judgments which rest on independent and adequate state grounds, notwithstanding the co-presence of federal grounds." Fay v. Noia, supra, 372 U.S. at 428, 83 S.Ct. at 843. However, the adequacy of a state decision to satisfy the exhaustion requirement of 28 U.S.C. § 2254 and the adequacy of state procedural grounds to preclude review by the Supreme Court are not one and the same thing. In Henry v. Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 570, 13 L.Ed.2d 408 (1965), a case before the Court on direct review, the Court stated: "[A] dismissal on

the basis of an adequate state ground would not end this case; petitioner might still pursue vindication of his federal claim in a federal habeas corpus proceeding in which the procedural default will not alone preclude consideration of his claim, at least unless it is shown that petitioner deliberately bypassed the orderly procedure of the state courts. Fay v. Noia, 372 U.S. at 438, 83 S.Ct. [822] at 848."

9. The Court stated: "§ 2254 is limited in its application to failure to exhaust state remedies still open to the habeas applicant at the time he files his application in federal court."

prejudice for failure to exhaust state remedies. *See* United States ex rel. Kessler v. Fay, 232 F.Supp. 139 (S.D.N.Y.1964); Kidd v. Coiner, 299 F.Supp. 1380, 1386 (N.D.W.Va.1969). *Cf.* United States ex rel. Figueroa v. McMann, 411 F.2d 915 (2d Cir. 1969); Capler v. City of Greenville, 422 F.2d 299, 301 (5th Cir. 1970).

 In the instant case, the Connecticut Supreme Court specifically declined to consider the merits of petitioner's claims because of the inadequacy of the record before it. Several state remedies remain open to the petitioner; an application for a finding of facts to perfect the record before the state Supreme Court; petition for state habeas corpus pursuant to Conn.Gen.Stats. §§ 52–466–470; or a renewed motion for reduction of bail in the Superior Court. Substantive relief by means of these remedies is not precluded by the Supreme Court decision, since the court never considered the facts or questions of law raised by petitioner Clark's claim. *Cf.* Wojculewicz v. Cummings, 143 Conn. 624, 632, 124 A.2d 886 (1956). The disposition of Clark's petition by dismissal rather than by remand is not an unequivocal indication that the petitioner is barred from renewing his petition in the Superior Court and there presenting evidence and affidavits in support of it. *Compare* State v. Hudson, *supra*, 154 Conn. at 638, 228 A.2d 132. The interest in achieving finality in criminal proceedings should not outweigh the interest in assuring that no individual is deprived of his liberty in violation of the Constitution. Connecticut has held that the policies of res judicata do not apply to habeas corpus proceedings, Moulthrop v. Walker, 11 Conn.Supp. 281 (1942), as has the United States Supreme Court. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

Until petitioner has obtained consideration of his substantive claims from the Connecticut Supreme Court, or can demonstrate his inability currently to obtain any further consideration, his petition is premature in this court. Accordingly, the petition is denied without prejudice to renewal after state remedies have been exhausted.